Mr Chief Justice Johnson delivered the opinion of the Court* The appellant Was indicted for the crime of larceny, and the first question presented, for the consideration of this court is, whether the charge is sustained by the proof. In order to constitute larceny, there must be a taking of the goods, either actual or constructive. An actual taking, is where the goods have been actually taken out of the owner’s posses* sion, against his will or without his consent; and a constructive taking, is where the owner delivers the goods, but either he does not thereby divest himself of the legal possession, or the pos* session of the goods has been obtained from him by fraud and in pursuance of a previous intent to steal them. See Arch. Cr. P. 274, and the authorities there cited. It is contended, in behalf of the appellant, that the indictment being for larcen^y, it is not sustained by the evidence, as that eould not establish a higher species of crime than that of embezzle-merit. The 5th see. of Art. 3 of chap. 51, of the Digest, enacts that “If any carrier or other bailee shall embezzle or convert to his own use, or make way with, or secrete with .intent to imbezzle, or convert to his own use, any money, goods, rights in action, property, effects or valuable security which shall have come to his possession, or have been delivered to him, or placed under his care or custody, such bailee, although .he shall not break any trunk, package, box, or other thing in which he received them, shall be deemed guilty larceny, and, on conviction, shall be pun ished as in causes of larceny.” It will be conceded by all, we think, that, before the passage oí the act referred to, the crimes of larceny and embezzlement were wholly separate and distinct, and that evidence appropriate to support an indictment for the one, was not admissible to sustain one for the other* The true point, then, to be determined is, whether this statute was designed to confound the two offences, or, in other words, was it intended to extend the sphere and definition of larceny, and to recognize such facts as theretofore would only show air embezzlement, as being sufficient to sustain an indictment for larceny. We are of opinion that such a construction would not be fair and legitimate from the spirit and intent, or even from the words of the act. The act was not designed to dispense with the necessity of indicting for embezzlement, but simply to extend and to lay down, with greater particularity, the crime of embezzlement,, and to raise the punishment 'to the same degree as that which was denounced against persons guilty of larceny. The case of The Commonwealth v. Simpson, reported in 9 Metcalf, at pages 141, 2 and 3, is strongly in point. In that case, the court said, “We have, however, at the request of counsél, and with reference to further proceedings in this case, considered the general question, whether an indictment for simple larceny is an appropriate and legal form for charging a case of embezzlement under the Rev. Sts., ch. 126, sec. 30. The statute, in express terms, says, that the persons doing certain acts ‘shalljie deemed, by so doing, to have committed the crime of simple larceny.’ Treating this statute as one defining the offence of larceny, and, under the legislative authority, embracing within it a larger range of offences to be hereafter known and recognized as larcenies, it would well authorize all offences described in it to be charged as larcenies, relying, upon the statute as an authority for the position, that the cases may be punished as larcenies, But we do not feel authorized to give so broad a construction to this statute, and one which would entirely merge the crime of embezzlement in that of larceny. The general object of the various statutes in relation .to embezzlement, in England and in this Commonwealth, doubtless was to embrace, as criminal offences punishable by law, certain cases where, although the moral guilt was quite as great as in larceny, yet -the technical objection arising from the fact of a possession lawfully acquired by the party, screened him from punishment. They were therefore de~ dared crimes punishable by law. The purposes of this statute may, as it seems to us, be sufficiently attained without any infringement of those rules of criminal pleading which require the charge to be particularly and certainly set forth. The defendant should, as far as is reasonably practicable, be apprised by the indictment of the precise nature of the charge made against him. This, in embezzlement, so far as respects the nature of the offence or character ofthe crime charged, may be easily indicated by setting forth the fiduciary relation or the capacity in which the defendant acted, and by means of which the property came into his possession, and by charging the fraudalent conversion. Such seems to have been the practice under the English Sts. 21 Hen. 8, c. 7: 39 Geo. 3, c. 35, and 52 Geo. 3, c. 63. See the forms of indictment in 3 Chit. Crim. Law, (4 Amer. Ed.) 961 et seq. Arch. Crim. Pl. (1st Ed.) 156. The court are of opinion that the two offences of larceny and embezzlement are so far distinct in their character, that, under an indictment charging merely a larceny, evidence of embezzlement is not sufficient to authorize a conviction; and that in cases of embezzlement, the proper nfode is, notwithstanding the statute to which we have referred, to allege sufficient matter in the indictment to apprize the defendant that the charge is for embezzlement. Although the party, in the language of the statute, “shall be deemed to have committed the crime of simple larceny,” yet it is a larceny of a peculiar character, and must be set forth in its distinctive character. We conceive the two statutes to be substantially the same, and consequently subject to the same construction. If then evidence going to establish the offence of embezzlement, was not admissible under this indictment, it is clear that the court erred in reading the act concerning embezzlement to the jury, and in stating to them that that was the law by which the case must be governed, in case the evidence should be found sufficient to make out the offence contemplated by it. The court also erred in refusing to give in charge the second instruction submitted by the counsel for the appellant. This was, “That, unless the defendant had a felonious intention at the time of taking the horse, that no subsequent felonious intention will render the previous taking felonious.” This instruction was predicated upon the law, and under the circumstances of the case the appellant was clearly entitled to the benefit of it. The proof utterly fails to show an actual taking, or that the appellant, obtained possession of the property against the will or without the consent of the owner; but, on the contrary, it appears, beyond a doubt, that it was voluntarily delivered to him. This being the true state of case, the most material, and indeed the only question left to be determined by the jury, was whether he so obtained it bona fide, or animo furandi. Having obtained the property by the consent of the owner, he cannot be legally convicted upon the present indictment, unless it shall appear from the facts as developed in the cause, that he harbored at the time, an intention wrongfully to convert it to his own use. This is a familiar principle in the criminal law and was expressly recognized by the supreme court of New Y ork, in the case of The People v. Anderson, 14 Johnson Reports, page 298. The court in that case say, “It was urged on the part of the people, that the same test ought to be applied in the case of the finding of a chattel and its subsequent conversion to the use of the finder, to ascertain the felonious intention, as has been applied where goods, and particularly horses and carriages, have been feloniously obtained, under the pretence that the person applying for and obtaining them, would use them for a certain specified purpose, and then has gone olf with them, and converted them to his own use. On a slight examination, the cases will be found to be very dissimilar; In the latter case, there must have been an original felonious intention, and unless this can be fairly deduced from all the facts in the case, it is no felony. Where that original felonious intention exists, although the’ person having it has obtained the consent of the proprietor to let him have the possession for one purpose, he intended to get it for another and far different, purpose; and he therefore never had had the possession for this different and fraudulent purpose, and may be fairly said to have acquired possession feloniously,” The intention, therefore, with which the appellant obtained possession of the horse, was the turning point in the ease, and consequently it was his undoubted right to have the jury pass upon all the facts in order to ascertain whether such intention existed at the time of the taking, or whether it was the result of subsequent reflection. We are clear, therefore, that in these respects, the court below, erred, and that consequently its judgment ought to be reversed. The judgement of the Pulaski Circuit tíourt herein rendered, is consequently reversed, annulled and set aside, and the cause remanded, with instructions to be proceeded with according to law, and not inconsistent with this opinion.